IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RISA JORDAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SCHOOL DISTRICT OF PHILADELPHIA | : | NO. 11-2712 |

MEMORANDUM

Bartle, J.                                      May 29, 2012

Plaintiff Risa Jordan ("Jordan") brings this action against her former employer the School District of Philadelphia (the "School District") for discrimination, retaliation, and hostile work environment under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (the "ADA").[1]  Before the court is the motion of the School District for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is

---

1.  Jordan also brought claims for interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. On May 15, 2012, we dismissed with prejudice these claims based on the representation of Jordan's counsel that she no longer intended to pursue these claims.

such that a reasonable jury could return a verdict for the
non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
254 (1986).  After reviewing the evidence, the court makes all
reasonable inferences from the evidence in the light most
favorable to the nonmovant.  In re Flat Glass Antitrust Litig.,
385 F.3d 350, 357 (3d Cir. 2004).

                              II.

        The following facts are taken in the light most
favorable to Jordan.  The School District hired her in 1988.  She
worked at the Fitzpatrick Elementary School ("Fitzpatrick") as a
teacher from 2000 until her termination in May, 2010.  Since
childhood, Jordan has suffered from depression, anxiety, and
post-traumatic stress disorder.  She is also affected with a sex
addiction and attention deficit hyperactivity disorder.

        Jordan began work at Fitzpatrick as a fourth grade
teacher.  During this time, Cheryl Glaser ("Glaser") was the
principal and Bernadette McDonnell ("McDonnell") the assistant
principal.  Jordan had consistently received satisfactory annual
performance reviews, and until the 2007-2008 school year, had no
significant record of discipline.

        Jordan states that in the 2007-2008 school year, her
depression began to worsen.  In February, 2008, Jordan failed to
submit electronically a complete set of grades for her students.
She informed Glaser that she was unable to complete this task
because the online grade system had "shut down."  Glaser

instructed Jordan to enter the grades manually after the report cards arrived in early March.

Jordan was absent from school on sick leave from Monday, March 10, 2008 through Friday, March 14, 2008.  She then remained out on extended sick leave until the end of the school year.  The parties dispute whether Jordan informed Glaser and McDonnell of her mental health problems.  Glaser stated in her deposition that she believed Jordan's requests for sick leave at this time were due to complications from a hernia and stomach surgery.  It is undisputed that Employee Health Services, a division of the School District's Human Resources Department, is responsible for granting sick leave and does not share medical information related to requests with Glaser or McDonnell.

As a result of the absences, Jordan did not manually enter grades as Glaser previously instructed.  On June 5, 2008, Glaser sent to Jordan's home address a memorandum stating that upon her return to school in September, there would be a conference to discuss several infractions that she had committed that semester, including her failure to:  (1) submit accurate grades; (2) comply with online grade reporting deadlines; (3) follow school policy by refraining from using a cell phone during instructional time; and (4) submit lesson plans.

When Jordan's classroom was cleaned at the end of the school year, school personnel discovered "prohibited items" such as "unauthorized electrical appliances, blankets, wicker items and other items which served no educational purpose."  In

-3-

addition, there were uncovered the original results of a
student's Pennsylvania System of School Assessment ("PSSA") exam,
which are meant to be kept in the student's file.  As instructed
by the school, Jordan sent a third party, her brother, to collect
her personal items.  However, Jordan entered her classroom to
assist her brother when he could not locate certain items.  This
violated a school policy which states that an employee is not
permitted to be present on school property while absent on sick
leave.  During this time, Jordan received memoranda from Glaser
chastising her for failing to provide the contact information of
someone to pick up her belongings, for allegedly having bugs in
her classroom carpet, for entering onto school property while on
sick leave, and for dumping the contents of her fish tanks on the
school's yard.

      At the end of the 2007-2008 school year, Jordan was
reassigned as a teacher from fourth to second grade.  According
to Glaser, this decision was made "based upon concern about
consistency in the academic and instructional program for the
fourth grade students," the "excessive use of substitute
teachers" and the fact that fourth grade has standardized state
tests while second grade does not.

      The next school year began on September 1, 2008.
Jordan was cleared by her doctor to return to work on
September 2, 2008.  She worked five days and then realized that
she was too ill to continue teaching her class.  During the five
days that Jordan worked, she arrived late to school three times.

Around this time, she also received two memoranda from Glaser
for:  (1) failing to notify the school office that a student not
on her roster was present in her class, which led to the student
being marked absent from her correct classroom; and (2) for
calling after school had already begun to request sick leave for
that day.  Beginning on September 9, 2008, Jordan was absent on
sick leave.  In October, 2008, she voluntarily committed herself
to a mental health care facility in California.  She remained on
sick leave until February 11, 2009, when she was approved for a
"restoration to health sabbatical."  This sabbatical lasted
through the end of the 2008-2009 school year.

On September 11, 2009, Jordan returned to work.  Glaser
reassigned her from second grade to a "health prep" teaching
position.  Glaser made this reassignment after consulting with
McDonnell and the regional superintendent, Lissa Johnson.  As one
of six prep teachers, Jordan would work with each student in the
school for 45 minutes per week.  Instead of having her own
classroom, she would travel between floors to other teachers'
classrooms to teach.  Health was a non-graded course.  According
to Glaser, this reassignment was made to provide consistency in
the academic program and to ensure that curriculum guidelines
were met.  Jordan states that this reassignment was "degrading."
She was allotted a coat room with a small table and broken chair
for an office.  She also asserts that she was provided no
curriculum but merely a coloring book from which to teach.

-5-

On September 15, 2009, Jordan signed in and then left school to park.  On September 16, 2009, she again signed in as having arrived at a time earlier than when she actually arrived. As a result, she was issued an unsatisfactory incident report.

On October 28, 2009, Glaser held a conference with Jordan regarding her infractions committed during the 2007-2008 school year.  Those purported infractions were:  (1) failure to comply with the deadline for entry of online grades in February, 2008; (2) use of a cell phone during instructional time to request sick leave; (3) submission of an inaccurate grade and a grade for a "Dance" class that a student did not take; (4) failure to submit lesson plans; (5) failure to call in a timely fashion to notify the school regarding who would be removing her personal items in June, 2008; (6) failure to follow school policy regarding prohibited items in classrooms such as microwaves and refrigerators; (7) entry onto school property to remove her belongings while on sick leave; (8) dumping of the contents of her fish tanks onto the school lawn; and (9) failure to keep a student's PSSA test results in the official student file.  Jordan was accompanied by a union representative.  She disputed some of these charges.  According to Jordan, these incidents occurred because of her illness, had never happened before, and would never occur again.  At the conclusion of the conference, Glaser issued an unsatisfactory incident report to Jordan and recommended a ten-day suspension.

On October 29, 2009, McDonnell held a conference with Jordan to discuss her falsification of school records by signing in at an incorrect time on September 15 and 16, 2009.  Again, Jordan was accompanied by a union representative.  She did not deny the charges but responded that she has her own children to deal with in the morning, that her actions did not harm the students, and that other teachers did the same thing.  McDonnell recommended a one-day suspension.

On November 9, 2009, Jordan again signed in at a time earlier than her actual arrival time.  She was issued a third unsatisfactory incident report for falsifying School District records.  McDonnell held a conference with her on January 20, 2010 to discuss the report and recommended termination.  At the conference, Jordan did not deny that she falsified the records but instead stated that she believed the recommendation of her termination was based on the fact that student scores were declining and the administration sought to reduce the use of substitute teachers.  Beginning on January 21, 2010, Jordan began a series of absences.  She applied for a second "restoration to health sabbatical" on April 5, 2010.  This was denied.

On April 14, 2010, Johnson reviewed all three unsatisfactory incident reports and upheld the recommendation for termination.  At the hearing before Johnson, Jordan again did not deny the falsification of school records but rather stated that, in her view, she was being terminated because Glaser was "out to get her" and because Glaser lost the opportunity to receive a

-7-

bonus due to Jordan's absences.  On May 13, 2010, the School
Reform Commission upheld Johnson's recommendation and determined
that Jordan's infractions constituted just cause for termination
under her collective bargaining agreement.  She was terminated as
of May 14, 2010.

The School District has submitted attendance records
from Fitzpatrick which show that Jordan was absent 78.5 days
during the 2007-2008 school year and 186 days during the 2008-
2009 school year.  Jordan has submitted the same attendance
record and does not dispute these numbers.  However, the parties
have submitted different attendance records for the 2009-2010
school year.  The 2009-2010 attendance record submitted by Jordan
shows no absences after January 21, 2010.  The court finds that
no jury would believe this submission to be credible.  This
record does not include annual absence totals, which are
calculated on the attendance records for the other two years in
issue.  Furthermore, Jordan admitted in her deposition to working
only intermittently during this period.  It is clear that the
record submitted by Jordan is an incomplete version and thus does
not create a genuine issue of material fact.  Accordingly, the
court will rely on the record submitted by the School District
which shows that Jordan was absent 88.5 days during the 2009-2010
school year.

III.

The ADA states that no employer "shall discriminate
against a qualified individual on the basis of disability in

-8-

regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112.  To establish a prima facie case of discrimination under the ADA, a plaintiff must show that:  (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of her job; and (3) she has suffered an adverse employment action as a result of the alleged discrimination.  See Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).

Once the plaintiff produces evidence to support a prima facie case, the burden of production then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  Finally, if the defendant meets this burden, the plaintiff must come forward with evidence suggesting that the legitimate reasons offered by the defendant were not its true reasons but rather a pretext for discrimination.  Id.  The burden of proof always remains on the plaintiff.  See, e.g., Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

The School District first asserts that Jordan cannot meet the requirements of the prima facie discrimination case under the ADA because she is not a "qualified individual."  A two-part test is used to determine whether an individual is qualified under the ADA:

-9-

> First, a court must consider whether the
> individual satisfies the prerequisites for
> the position, such as possessing the
> appropriate educational background,
> employment experience, skills, licenses, etc.
> Second, the court must consider whether or
> not the individual can perform the essential
> functions of the position held or desired,
> with or without reasonable accommodation.
> The determination of whether an individual
> with a disability is qualified is made at the
> time of the employment decision.

Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir.
1998) (internal quotations and citations omitted).  The parties
do not dispute that Jordan has the appropriate educational
background, experience, and licenses to work as an elementary
school teacher.  Instead, the School District maintains that she
cannot perform one of the essential functions of teaching, that
is attending school, and that no reasonable accommodation can
cure this deficiency.

     As discussed above, Jordan was absent 78.5 days during
the 2007-2008 school year, 186 days during the 2008-2009 school
year, and 88.5 days during the 2009-2010 school year.  School
District policies permit full-time employees ten days of paid
sick leave per year.  Further absences are subject to approval by
the Director of Employee Health Services, as are all absences
which exceed three days.  A full-time employee is also eligible
for three paid personal days.  Additionally, employees may apply
for a "restoration to health sabbatical" for up to half a school
year.  If the employee is unable to return to work at the
conclusion of the sabbatical, employees "may be entitled to

further leave for one half school term or its equivalent."

Both parties cite to our Court of Appeal's decision in Smith v. Davis.  248 F.3d 249 (3d Cir. 2001).  In Smith, the plaintiff was a probation officer who suffered from the disability of alcoholism.  Id. at 251.  The district court concluded that Smith was not a qualified individual under the ADA because he left work early several times without prior approval and also left work claiming to be sick but was later spotted at local drinking establishments.  Id.  He also utilized excessive sick leave.  Id.  The Court of Appeals recognized that "an employee who does not come to work on a regular basis is not 'qualified.'"  Id. (citing Tyndall v. National Educ. Centers, 31 F.3d 209, 213 (4th Cir. 1994)).  However, the Court of Appeals reversed the grant of summary judgment.  It found that a genuine issue of material fact existed as to whether the plaintiff was qualified because he denied some of the facts on which the district court relied, such as that he had left work early without prior approval.  Id. at 251-52.

Here, the relevant job description provides that elementary school teachers must instruct students in various subjects, assess their skill levels and achievement, hold discussions with parents, attend faculty meetings, and maintain classroom discipline.  The faculty handbook issued by the School District also provides that teachers are expected to arrive on time and to "make every effort to be in school every day" because "[t]he integrity of our educational program depends on this."

-11-

Jordan and other teachers were reminded in memoranda from Glaser that "regular attendance and punctuality are essential to insure [sic] the continuity of the educational program for the students."  Jordan does not dispute that her essential job duties included teaching her classes and assisting other teachers.

As discussed above, Jordan was absent for a significant portion of the last three years of her employment, that is, 78.5 days during the 2007-2008 school year, 186 days during the 2008-2009 school year, and 88.5 days during the 2009-2010 school year. The School District's answers to interrogatories show that no other teacher was granted such extensive leave.  At the time of her termination, Jordan had been declared totally incapacitated for an indefinite amount of time by one of her doctors and another doctor had submitted a note dated April 13, 2010 which stated that she required the next four weeks off from work. Jordan also had submitted recently a request for a second "restoration to health sabbatical" in which she claimed to need another six months of leave.  She had been absent for almost an entire semester.  These absences by this time at the very least rendered her unable to fulfill the most essential function of her job, which was to provide instruction to students in the classroom on a regular basis.

In response, Jordan asserts that the School District cannot now claim that she was unqualified for her teaching

position due to excessive absenteeism because her absences were approved by the School District.[2]  This argument misses the mark. As discussed above, the School District has a generous leave policy and went to great lengths to accommodate Jordan.  As a result, Jordan was absent from work from March 10, 2008 until September 11, 2009 with the exception of five school days in September, 2008.  She was then absent fifteen days from September, 2009 until January 20, 2010.  From January 21, 2010 until her termination on May 14, 2010, Jordan was in the classroom only six times.  At the point of her termination, which is the critical date under the ADA, she had missed all of the time set forth above.

Another judge of this court had before her a similar case.  In Meyers v. Conshohocken Catholic School, the plaintiff was a teacher who suffered from a neuromuscular disease and a form of asthma.  No. 03-4693, 2004 WL 3037945 (E.D. Pa. Dec. 30, 2004).  She was absent from school on account of her illness for amounts of time varying from 2.5 days to 59.5 days per year over the last ten years of her employment.  Id. at *2.  During her employment, the school made attempts to accommodate her such as allowing her to miss faculty meetings and to take leave whenever she needed it, granting her an alternative work schedule, and

---

2.  The School District disputes whether some of her absences were approved.  It also asserts that Jordan falsified doctors' notes to support her absences during March and April, 2008. Nonetheless, we will assume for purposes of this motion that all absences were approved.

offering her alternative positions.  Id.  The plaintiff was
eventually terminated due to inability to attend work
consistently and brought suit under the ADA.  Id.

   The court found that the plaintiff was not qualified
for a teaching position due to her excessive absences.  It
stated:

> The defendants' past accommodations to
> Meyers's illnesses were beyond the scope of
> the ADA's requirements.  The defendants were
> not required to accommodate Meyers's
> illnesses by allowing her to miss work
> whenever and for however long she was ill.
> Regular attendance was an essential function
> of Meyers's job and could only be performed
> when Meyers was in the classroom with her
> students.  Any accommodation that excused
> Meyers from this requirement was unnecessary
> under the ADA, as an employer need not
> eliminate the essential functions of a
> position in order to accommodate an
> employee's disability....  Because allowing
> Meyers to miss work whenever she became ill
> was not reasonable, the defendants were not
> required to continue this accommodation.

Id. at *9 (internal citations omitted).  Like the employer in
Meyers, the School District granted accommodations to Jordan
which exceeded the scope of the ADA.  The School District was not
obligated to continue to allow Jordan to miss work whenever she
became ill again.  Id.; see also Walton v. Mental Health Ass'n.
of Se. Pa., 168 F.3d 661, 671 (3d Cir. 1999).

   Jordan also asserts that the School District cannot
argue that she is unqualified due to her absences because the
School District contends that she was terminated for reasons
unrelated to her absences, namely for falsification of school

-14-

sign-in records.  We also find this argument unpersuasive.  The
School District's rationale for terminating Jordan goes to its
obligation to put forth a legitimate, nondiscriminatory reason
for the adverse action.  This part of the McDonnell Douglas
analysis arises only after the plaintiff has shown that he or she
is a qualified individual as part of the prima facie case.  See
Shaner, 204 F.3d at 500.  These are separate and distinct
elements and, it follows, need not be identical.  The cases cited
by Jordan are not to the contrary.

        While we are sympathetic to Jordan's health problems,
teaching does not allow for the same accommodations as other
professions, where sometimes employees may be allowed or be able
to work from home or to change their hours.  See Flory v.
Pinnacle Health Hosps., 346 F. App'x 872, 876 (3d Cir. 2009);
Davis v. Guardian Life Ins. Co. of Am., No. 98-5209, 2000 WL
122357, at *4-5 (E.D. Pa. Feb. 1, 2000).  Instead, teaching
requires that employees be present in the classroom at set times
and on a daily basis in order to provide consistency and
continuity for pupils.  Because Jordan's extensive record of
absences over the last three years of her employment is truly
glaring, we conclude that she has not raised a genuine issue of
material fact regarding whether she is a qualified individual as
required under the ADA.  When she was terminated, the record
without dispute establishes that she was not qualified to be a
teacher in the Philadelphia public school system.

IV.

For her hostile work environment claim, Jordan must put
forth evidence that:  (1) she is a qualified individual with a
disability under the ADA; (2) she was subject to harassment; (3)
this harassment was due to her disability; (4) the harassing
treatment was sufficiently severe or pervasive to alter the
conditions of her employment and to create an abusive working
environment; and (5) that the School District knew or should have
known of the harassment but failed to take remedial action.
Walton, 168 F.3d at 667.  As discussed above, Jordan has not
created a genuine issue of material fact regarding whether she is
a qualified individual under the ADA at the time of her
termination and thus cannot proceed on her claim for hostile work
environment.

Accordingly, the motion of defendant for summary
judgment will be granted as to her claims for discrimination and
hostile work environment.

V.

We next address Jordan's claim for retaliation.  Title
42 U.S.C. § 12203(a) provides that "[n]o person shall
discriminate against any individual because such individual has
opposed any act or practice made unlawful by [the ADA] or because
such individual made a charge ... under [the ADA]."  Furthermore,
that section states that "[i]t shall be unlawful to coerce,
intimidate, threaten, or interfere with any individual in the
exercise or enjoyment of, or on account of his or her having

-16-

exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]."  Id. at § 12203(b).

Our Court of Appeals has instructed that "[u]nlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case need not establish that he [or she] is a 'qualified individual with a disability.'"  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 502 (3d Cir. 1997).  Thus, our decision with respect to her discrimination and hostile work environment claims does not control whether Jordan may be entitled to pursue her retaliation claim.  See id.

To survive summary judgment, Jordan must put forth evidence raising a genuine issue of material fact that:  (1) she engaged in protected activity; (2) she suffered an adverse action at the hands of her employer; and (3) that a causal connection exists between her protected activity and the adverse action. Id. at 500.

Here, Jordan has satisfied that standard.  She alleged in her deposition that she informed Glaser of her mental health problems and that she requested accommodations in the form of leave from work.  Jordan also stated during hearings with School District administrators that she believed her termination was due to her disability and her absences.  Even if her requests for leave exceeded the scope of what is required under the ADA, she nonetheless engaged in protected activity if she had a reasonable, good faith belief that she was entitled to request

-17-

this accommodation.  <u>Williams v. Phila. Housing Auth. Police</u>
<u>Dep't</u>, 380 F.3d 751, 759 n.2 (3d Cir. 2004); <u>see also</u> <u>Aman v.</u>
<u>Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1085 (3d Cir. 1996).
In close temporal proximity, she was disciplined and then
terminated.

          The burden shifting framework established by the
Supreme Court in <u>McDonnell Douglas Corp. v. Green</u> applies to
retaliation claims under the ADA.  <u>See</u> <u>Williams</u>, 380 F.3d at 760
n.3 (citing <u>McDonnell</u>, 411 U.S. at 93).  Because Jordan has
raised a genuine issue of material fact regarding her prima facie
retaliation case, the burden of production switches back to the
School District to articulate a legitimate, nonretaliatory reason
for the adverse action.  <u>Id.</u>  If the School District meets this
burden, Jordan must then come forward with evidence suggesting
that the reason offered by the School District was pretext.  <u>Id.</u>

          The School District asserts that it had a legitimate,
nonretaliatory reason for the actions taken against Jordan.  It
maintains that Jordan was disciplined and eventually terminated
because of her "repeated, well-documented and admitted
performance deficiencies."  Specifically, the School District
maintains that Jordan received memoranda from Glaser because she
did, in fact, commit violations of school policy, including:  (1)
allowing a student to grade papers; (2) failing to meet deadlines
for submitting grades; (3) submitting incorrect grades; (4) using
her cell phone during instructional time; (5) failing to remove
personal items from her classroom; (6) keeping prohibited items

such as a microwave, refrigerator, and fish tanks in her classroom; (7) entering school property while on sick leave; (8) failing to submit lesson plans; (9) failing to file official PSSA results in a student folder; and (10) arriving late to meetings, to pick up students, and to school in the morning.  It points out that the charges leading to Jordan's termination were reviewed in several hearings and upheld by the regional superintendent and by the School Reform Commission.

          After review of the record, there are genuine issues of material fact with respect to whether the School District's reasons for disciplining and terminating Jordan were pretextual. Accordingly, the motion of the School District for summary judgment on Jordan's ADA retaliation claim will be denied.